Good morning, Your Honors. I'll move these to court. I would like to begin with the instructional error issue, the failure to properly instruct with the unintentional killing element of manslaughter. In this case, the entire defense was that defendant, I mean, appellant and his brother did not intend to kill Alex, that they went basically to talk to him. Yes, they confronted him, and they did bring weapons. However, the initial Wasn't it largely either self-defense or protecting his brother? Wasn't that the defense? That was one defense, and the other was that if that didn't work, it was manslaughter, but it wasn't murder. They didn't intend to kill. He was backing up. I can see why you might have difficulty saying I intentionally shot him in self-defense, and then I didn't intend to shoot him. That's not what he's saying. Well, he's saying that he shot. Yes, he shot, but he didn't mean to kill him. He shot in reaction. I see. He shot. Yes, he shot. But he didn't intend to kill him either when he shot or when he went there. So the conscious disregard, the fact that he that there was conscious disregard of human life was the fact that they went there armed, and that was the danger that he put Alex into. So the argument was that because he didn't intend, he didn't go there intending to kill him. He went there carelessly and recklessly. However, the circumstances changed when Alex came out and refused to talk, but came out angrily and understandably he had the right to defend his property. However, he didn't just come out to defend his property and say with his gun, go away. And he basically came out and advanced and charged and screamed, I'm going to shoot you. I'm going to shoot you. And he was pointing his gun between both brothers. Well, on the instructional error, I guess the question I there's no the state court agreed that the lesser included instruction was incorrect. Right. And so the question is, did that violate his constitutional right? Yes, I'm saying because it did, because it was an element of the defense of Nance voters, an element of actually was an element of murder, which is an absence of heat of passion. I mean, Nance voters, an absence. Murder is an absence of heat of passion. I'm sorry. Has the Supreme Court ever established that there's a constitutional right to a lesser included instruction? In a noncapital, in a noncapital case? Not precisely, but they have said that you are entitled to an instruction on the element to present a defense. The due process requires the allowance of the right to present a defense and the right to be instructed on every element of that defense or of the crime charge. And here he was deprived of a proper instruction on the element of the of the crime charged and that precluded him from presenting a defense. And that was that he he shot in consciousness regard of the life of Alex. But while in a heat of passion or under, you know, a reason, a fear of himself being killed, which is which is imperfect self-defense. So putting this in context, this child, this kid was 16 years old. And I don't think this should have been judged on a reasonable man standard. It should have been judged on a reasonable juvenile standard. And as the U.S. Supreme Court has held, juveniles are impulsive. They're different. They're not exactly adults. They don't react more thoughtfully as adults do. They're very impulsive. And here particularly, this kid came following his brother, thinking that his brother was going to an armed, you know, rival gang member's house and was in danger. So he came following him. And he was armed. But he expected his brother to work it out as he had in the past. They were neighbors. So this wasn't like a gang situation. They were neighbors. And he was going to work it out. So the kid comes along. And all of a sudden, Alex, instead of talking to his brother, which he probably assumed was going to happen, or maybe he was afraid that Alex was going to be the one who was going to do something to his brother, comes along to back up his brother. And Alex comes out, advances with his gun, pointing, pointing. So this poor kid, he shouldn't have been there, I agree, but was terrified that he was going to be shot. And as soon as Alex, who had the gun. Kennedy, when you made this argument to the jury, but in the superior court, did they have a conference before the instructions? Did you have an opportunity to challenge the instruction in the trial court? This particular instruction wasn't challenged in the trial court, no. But this should have been. So it would have to be a plain error. Yes. And it was, yeah, but there was a. And so the California court accommodated you by saying it was a plain error. They did say that. So. They agreed that this was an error. But there's no Supreme Court case that you could find or that we've found that says that's an error in a constitutional language. It's a constitutional error. Except that it's, it goes to the Jackson v. Virginia. Well, then I'm moving over there to the institutions of evidence. But it goes to the fact that he's deprived of his right to defend, to present it to France, which is a due process violation. So it is constitutional. Because if the jury is not properly instructed on his defense, then he's, it's a total violation of due process. And this was his primary, this was his key defense that he did not intend to kill and he acted in a heat of passion. I mean, he did intend to, he, I'm sorry, I'm sorry. That he went there in conscious disregard to life, but also when he shot. He was shooting in defense of his brother, and that was the story that you wanted the jury to believe. What difference does it make whether there was a technical error in the manslaughter-included-crime instruction? Because the error confused the jury to believe that the only language that they ever were able to consider in terms of his going there armed was in conscious disregard to life, was secondary murder. That they were, the jury was, the problem with the U.S. Supreme, I mean with the, I'm sorry, California, I'm very nervous, I'm sorry. With California Supreme Court's finding that there was no prejudice was they said that other instructions cured the error because the jury was told that it didn't matter whether he intended or did not intend to kill. And the whole point of his defense was that he did not intend to kill, but when the court specifically pointed out to the jury that they had to disregard the conscious disregard to life element of manslaughter, the only option the jury had with that language of conscious disregard to life, i.e. his going to Alex's house armed, which was putting Alex in danger, was second-degree murder. So they could never find that even though he went to Alex's house with conscious disregard to human life, i.e. armed, they couldn't find that even if he was acting in the heat of passion, that it was manslaughter. They were told you cannot consider that defense at all. So this is exactly his defense. He went there not intending to kill, but shot in the heat of passion or in unreasonable self-defense. So the out that the state courts have is to say it doesn't matter whether they fail to give an unintentional instruction because the jury found him guilty of intentionally killing. And your response to that is, well, the trouble is the jury could have been forced into that by the all or nothing concept of the instructions. The Supreme Court has bought that argument in capital cases. But they have also said we don't address the question whether that rule applies in non-capital cases. And under AEDPA, we're supposed to look for clearly established laws established by the Supreme Court of the United States. And so if they leave the question open, I'm concerned that we may not have Supreme Court law that could come to your assistance. Well, I believe that Jackson v. Virginia can be extended to this because this is a failure to instruct on elements of the crime. And the element of manslaughter, which is a separate crime, is that it has to be you either intend to kill or you kill unintentionally while acting in the state of mind that the appellant was acting under. So I think that Jackson v. Virginia extends it because he was pretty much denied his entire defense. I mean, it wasn't only an instructional error. The instructional error took away his defense. So it was like not at all instructing on the defense. And that's totally a due process violation. And I don't ‑‑ I think that the U.S. Supreme Court in Jackson v. Virginia upholds that. And also then you have the fact the other U.S. Supreme Court cases, Cuthbert v. McNaughton, holding that it's not a single instruction. You have to look at the whole trial and the other instructions. And here are the other instructions. I mean, here the record shows that the court explicitly said you must not consider the conscious disregard to human life in regard to manslaughter. Cannot consider it. Not a defense. So all they were left with was conscious disregard, which was to convict him of manslaughter. So that is a total denial of the U.S. Supreme Court. The U.S. Supreme Court says that a jury must ‑‑ a jury follows instructions. They're presumed to follow instructions. And one instruction cannot be considered in isolation. And here this instruction was considered in isolation, or at least the California Supreme Court said, that the jury didn't really believe what the court told them. And that's not true. The jury is presumed to follow instructions. The court told them you cannot ever find manslaughter when he acted without an intent to kill. And I think that that totally deprived him of a fair trial and due process. And then moving on to the fact that I think there's no sufficient evidence that he did not act in manslaughter. So even that, based on the fact that there's an insufficiency of the evidence of the crime itself, again, should lead to a manslaughter verdict. Here all the people's witnesses did not prove that Alex did not come out of the house with a gun, angry and advancing. Whatever they said, you know, because the California Supreme Court basically said that, well, there was evidence that he came out and that Petitioner never drew his gun. I mean, that Alex never drew his gun before Petitioner fired. And that's just not the evidence. So that's what I'm telling you. Thank you. Thank you, Counsel. Your time has expired. Okay. Thank you. Good morning. Good morning. Robert C. Schneider, Deputy Attorney General for Appellate Respondent for the people of California. To begin with, this case is not about an inherently dangerous disregard of human life in going to Alex's house and confronting him. The inherently dangerous act, if there was one, was shooting him in the ten ring and killing him. Shooting somebody in the chest, that's the dangerous thing if there was one. And the problem they have is, Petitioner has is, if I'm six feet from you and I shoot you in the chest, what reason would you find that was not intent to kill? I might shoot you in the chest from six feet away if I'm intending to kill you, regardless of what you say. Particularly when my defense is not, I was intending to wound him. I meant to shoot over his head, but he had a flying bird ricochet down. I shot the ground to ricochet it up. I was shooting inherently dangerous, but clearly my action showed I didn't intend to kill him. No. Bang. In the ten ring. Drops him. 290 pounds. Dropped him in the shot. That's not an inherent act that you're doing to disregard it. You're shooting him to kill him. And as you pointed out, in self-defense, it's not important if you intend to kill. You can intend to kill with self-defense. And their defense was not heat of passion, not all those things. Their defense was, it was self-defense. In fact, in the record, Petitioner says when he got to jail, or got to the police station, he believed he'd done the right thing. This was not a heat of passion case at all. He testified himself. We have what he said. Now, he was lying, but he's bound by his own lies. And his lie was, I was watching Alex. I was calculating his behavior. I was seeing my brother's position, my position. I was evaluating my opportunities to retreat. All these things I was evaluating. At some point, I saw my opportunity to shoot him. When the danger became acute to my brother, I pulled my gun out without warning and shot him. Right in the chest. Where's the heat of passion? I've seen very few cases where there's as much calculated, cold description of what was going on. This wasn't, I saw red. The next thing I know, I smell gunpowder. I was so feared. I was aiming the gun, and I was shaking, and the gun went off accidentally. None of those kind of heat of passion elements. And heat of passion, obviously, is a mental state. And the best evidence is from the words of the person who supposedly is in passion. Here he was. He was scared. You know, he always carried a gun. This is some kid who got here. Carry this with you. Gun? He carried the gun all the time. Why did he carry the gun? To shoot gangsters who bothered him. That's why he carried it. That's what he testified. Why was he going with his brother? To back him up. Back him up against who? The rival gangster down the street. Where is his heat of passion? He was doing exactly what he intended to do. And, of course, the jury did find, actually, in the verdicts, that he intentionally shot Alex causing his death. So there's no question of accident involved in this at all. And the instructions, which are conceitually erroneous. That's not a problem if there was any evidence that this was an implied malice killing. But there wasn't any. The implied malice evidence was so weak that both the State Court of Appeals and the district court found no reasonable juror would have found one of these facts that this was an implied malice case. So it's harmless. And, besides that, Caljit 850, of the instructions given to the jury, made explicit that if you have heat of passion, you incurred self-defense, even if intent to kill exists, malice is mitigated, hence manslaughter. So the issue of intent to kill, implied malice, not really important. If some juror had brought that up in the jury room, they would have said, but it doesn't make any difference. Let's not argue over that. Because even if we think he's intent, you think he's not, who cares? The issue is, was this unreasonable self-defense? First, self-defense, he walks home, it's a justifiable killing. Unreasonable self-defense, let's talk about that. Heat of passion, no real evidence of that. You get back to the unreasonable self-defense. And there, he can attempt to kill all he wants. That's not material. Who's going to argue about that? And it's also kind of, it's curious to point out, or it's important to point out, the jury deliberated in this case for a grand total of two hours and 28 minutes. This was not, there was no holdouts and vague disputes going on here. This was very quick. The jury saw what this was. It probably was a first-degree murder if he lucked out on that second degree. But the jury instruction goes on to say, before you can convict him of second-degree murder, the people, the people have a burden to prove you under reasonable doubt that this was not unreasonable self-defense, that this was not heat of passion. So any juror who believed that this was an implied malice killing, that's not sufficient for manslaughter. If I kill you with implied malice and unlawful killing, that's second-degree murder. The important fact is, is it under heat of passion or unreasonable self-defense? The juror was explicitly instructed, you can't find murder unless the people disprove those things. That's pretty heavy burden. This jury is following instructions. How could they ignore that? That that juror who believed it was an implied malice killing under heat of passion or under self-defense, unreasonable self-defense, why did they ignore this very explicit direction? You can't find murder unless people disprove that. But it goes on. It gets better. In Caljit 872, it told the jury, now, you know, sometimes things are confusing. If you have a reasonable doubt, you're not sure which it is. You're not sure if it's heat of passion. You're not sure if it's self-defense, unreasonable self-defense. You must give a benefit of doubt to petitioner and you must find manslaughter. This is no all-or-nothing case. And obviously, this is not a capital case. Those rules don't apply. The capital rules do not apply. No constitutional right to less than exclusive instruction. The jurors were told, hey, if you can't make a choice here, you must give him benefit of doubt. You must find manslaughter. But the juror who was the supposed juror, which didn't exist, but if he did, who was confused about the intent, not intent, well, one instruction says that's not important. You can still find manslaughter. And how did he somehow give up the belief that this was, in fact, an unreasonable self-defense case? When it's very explicit, you can't give that up. But if you are confused, it has to go, the tie has to go to the defendant. Now, of course, the courts below found that this is a matter of, since this is a substantial possibility of injurious effect, there's a weighing involved here. But the facts of the case just don't show, again, shooting somebody in the chest is not the kind of act that you could then say, oh, I didn't mean to kill. Again, the defense has heard, the petitioner has repeatedly said that the dangerous act was going there. That wasn't the dangerous act. That was dangerous. The dangerous act was shooting Alex in the chest, killing him, not the dangerous act. And, again, there's no testimony he did anything other than shoot him in the chest to try and defend himself. The petitioner also blends in the same argument, tries to blend in Jackson v. Virginia, which, of course, is another instruction, another issue. That's sufficiency of the evidence. And, again, that is a very tough case to overcome. And this Court, you have the ADPA and you have the Jackson v. Virginia, which California did apply. This Court would have to find that the California court was unreasonable in finding that no rational juror could conclude on this fact that he intended to kill. I'm sure you've read the facts, but he went to Alex's house with his brother to load a gun, a gun he carried all the time, a gun he said he carried to defend himself against gangsters. He went there to back up his brother. He was not, you know, I got your back, bro. They walked up with their guns ready, aimed it at the house. When Alex came up, there was a spook, shot him in the ten ring and killed him. No rational juror could find that was second-degree murder. I don't think that test can be won. Petitioner in her briefing and here tries to re-argue the facts. I'm sorry, this Court is not a jury. You're bound by the facts that the jury found. All issues of credibility, conflicts, inferences have to be drawn on my side. I don't like to waste time if there are no questions. No further questions. Thank you, Counselor. Again, the case just argued will be submitted for decision. The Court will hear argument next in United States v. Mitchell.
judges: Goodwin, Canby, O'Scannlain